# Glen Alden Coal Co. et al., Appellants, *v.* Scranton City et al.

*Taxation—Municipalities—Triennial assessments—Intervening assessments—Words and phrases—"Any"—Title of Act—Acts of July 9, 1897, P. L. 219; April 1, 1909, P. L. 83, and June 23, 1919, P. L. 575—Cities of second class.*

1. The Act of June 23, 1919, P. L. 575, governing cities of the second class, authorizes and empowers the making of a new, complete and general assessment of all property in such cities in a year intervening between triennial assessments.

2. As the assessors have full powers under the Act of 1919 to make a new assessment "in any subsequent year other than triennial years" in "any ward or wards" they necessarily have such powers in all wards, and hence throughout the entire city.

3. The word "any" is frequently used in the sense of "all" or "every" and when thus used has a very comprehensive meaning.

4. The history of tax legislation in Pennsylvania, when taken as a whole, as shown by the Acts of May 13, 1856, P. L. 567; May 23, 1889, P. L. 277; May 23, 1895, P. L. 119; July 9, 1897, P. L. 219; March 7, 1901, P. L. 20; April 1, 1909, P. L. 83; June 27, 1913, P. L. 568, and June 23, 1919, P. L. 575, does not require that a narrow construction should be given to the word "any" as it is used in the Act of June 23, 1919, P. L. 575.

5. The legislation governing cities of the second class shows that the Act of 1919 gives full authority to make a general assessment in a year intervening between triennial assessments.

6. The Act of June 23, 1919, P. L. 575, granting authority to make new assessments is not restricted to special circumstances nor intended to serve the same purposes as the revisory provisions of the Act of July 9, 1897, P. L. 219.

*Statutes—Construction—Title of act—Act of April 1, 1909, P. L. 83.*

7. The title is part of an act and aids, if need be, in its construction.

8. The title of the Act of April 1, 1909, P. L. 83, which expressly gives notice that the statute is for the purpose of "enlarging and increasing the jurisdiction and powers" of tax assessors in cities of the second class, aids in construing the provision in the body of the act (repeated in the Act of June 23, 1919, P. L. 575) relating to assessments in other than triennial years.

Argued November 25, 1924. Appeal, No. 158, Jan. T., 1925, by plaintiffs, from decree of C. P. Lackawanna Co., May T., 1924, No. 2, In Equity, dismissing bill in equity, in case of Glen Alden Coal Company et al. v. City of Scranton et al. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill to set aside general tax assessment. Before MAXWELL, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Bill dismissed. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

*John P. Kelly,* of *O'Brien & Kelly,* with him *J. H. Oliver, D. R. Reese, W. A. Skinner, H. C. Reynolds, H. J. Connolly, Cornelius B. Comegys, R. L. Levy, M. J. Martin, J. H. Torrey* and *Knapp, O'Malley, Hill & Harris,* for appellants, cited: Phila. v. Ry., 102 Pa. 190; Phila. & Reading C. & I. Co. v. Comrs., 229 Pa. 460; Wartman v. Phila., 33 Pa. 202; Holman's App., 106 Pa. 502.

*Philip V. Mattes,* City Solicitor, with him *David J. Reedy,* for appellees, cited: Chicot County v. Lewis, 103 U. S. 164.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 5, 1925:

· Certain real estate owners in a city of the second class sued in equity to set aside the general tax assessment for the current year and to restrain collections thereunder; the bill was dismissed and plaintiffs have appealed.

The controlling question involved, stated by appellants, is: "Does the Act of June 23, 1919, P. L. 575, governing cities of the second class, authorize and empower the making of a new, complete and general assessment of all property in such cities in a year intervening between triennial assessments?"

A regular triennial assessment of all property within the City of Scranton was made in the year 1923. In 1924, a new, complete assessment was made, at generally increased valuations. Appellants contend that this could not legally be done; they argue that the system of triennial assessments is so firmly fixed in our law that the legislative language employed in the Act of 1919 should be read, not as altering that system, or authorizing wholesale departures therefrom, but rather as merely authorizing new or additional valuations by way of corrections of the triennial assessment, where changes subsequently occur through "the erection of new struc-

tures, the destruction or removal of old structures, the mining out of part of the coal or minerals from the land assessed in the last triennial assessment, or by reason of any other [such] particular and special circumstances"; and that these altered conditions would warrant a new assessment in particular instances or locations only, but not a general assessment in the whole city.

The words of the act which we have to construe are: "They [the assessors] shall triennially make a valuation for all purposes of municipal taxation, and shall have ......the power to make a new assessment in any ward or wards they deem necessary in any subsequent year, other than triennial years, in the manner prescribed by law for the triennial assessment."

The above-quoted words on their face certainly give full authority, not merely to revise or enlarge a previously made assessment, but also "to make a new assessment......in the manner prescribed by law for the triennial assessment," and to do this not only for particular locations within the city, but "in any ward or wards" the assessors may "deem necessary." It seems unanswerable that, if the assessors have full powers to make a new assessment "in any subsequent year other than triennial years" in "any ward or wards," they necessarily have such power in all wards, and hence throughout the entire city.

"The word 'any' is frequently used in the sense of 'all' or 'every,' and when thus used has a very comprehensive meaning": 2 Am. & Eng. Enc. Law (2d ed.) 414; 3 Corpus Juris 232. The words "any railroad" were so construed by the Federal Supreme Court in Chicot County v. Lewis, 103 U. S. 164, 167, the court saying: "The power given is to subscribe to any railroad; this includes all railroads in the state, without restriction." In construing an act of assembly in Williams v. Ivory, 173 Pa. 536, 542, we said: " 'any person' means every person"; this construction was followed in Peterson v. Delaware River Ferry Co., 190 Pa. 364, 365. In Buck-

walter v. Black Rock Bridge Co., 38 Pa. 281, 287, "any damages" was held to mean "all damages." But, say appellants, the history of tax legislation in Pennsylvania, when taken as a whole, requires that the narrower construction contended for by them be given to the word "any" as it is used in the act now before us.

It must be admitted that originally a rigid system of triennial assessments prevailed generally throughout the State and still governs county assessments. The values of farms and small town properties, however, do not fluctuate like city real estate, and the legislature apparently recognized this fact, for, while preserving the obligation to make triennial valuations, it has, as to cities, pursued a steady course of permitting intervening annual assessments to be made in the same manner as triennial ones, whenever the taxing authorities deem them necessary. The change was first enacted for the benefit of Philadelphia, then for cities of the third class, and lastly for those of the second class, thus covering all classes of cities known to our law.

The Act of May 13, 1856, P. L. 567, 569, relating to Philadelphia, provided that "No change shall be made in the valuations of real estate, in other than the triennial year, except in case of destruction by fire or flood, or of improvements made"; but this system was departed from by the Act of February 2, 1867, P. L. 137, 138, which provided (in almost the same words as those now found in the act before us, referring to cities of the second class) that, in addition to making the triennial assessment, the assessors shall have power in "any ward, or wards, of said city" to make a new assessment "in any subsequent year, other than the triennial year." While no case passing on this feature of the act is cited, we know as a matter of fact that annual general assessments, made avowedly as such, have for years prevailed in Philadelphia.

Section 5 of article XV of the Act of May 23, 1889, P. L. 277, 318, as amended by the Act of May 23, 1895, P.

L. 119, 120, (passed on in Jermyn v. Scranton, 186 Pa. 595, when that city was in the third class) provided, although in somewhat different language from the Philadelphia statute, a like system for cities of the third class. This was reënacted by the Act of June 27, 1913, P. L. 568, 618.

When the legislation governing cities of the second class is examined, and considered in connection with the development of the law shown by the statutes noted in the last two paragraphs, it seems clear that the Act of 1919 means just what it says and that it gives full authority to make the general assessment here under attack.

If the purpose of the lawmakers was simply that contended for by appellants, then there is no apparent reason for inserting in the Act of 1919 the provision here in question. We say this because section 2 of the Act of July 9, 1897, P. L. 219, as to tax assessments in cities of the second class, grants ample power to "revise, equalize or alter [triennial] assessments by increasing or reducing valuations" or by adding "subjects of taxation ......omitted therefrom"; which provision covers all the ways of correcting such assessments, and authorizes all the amendments thereto suggested by the interpretation that appellants would put on the present legislation.

The Act of March 7, 1901, P. L. 20, "for the government of cities of the second class," by article VI, particularly retains the above-recited provisions of the Act of 1897; and thus the law stood until the Act of April 1, 1909, P. L. 83. Section 2 of this latter act recites for amendment article VI of the Act of 1901, which provided for a triennial assessment in cities of the second class and stated that it "shall remain the lawful assessment......until the next triennial assessment," substituting for that provision the following: "They [the assessors] shall have the power to make a new assessment in any ward or wards they deem necessary, in any subsequent year other than triennial years, in the man-

ner prescribed by law for the triennial assessment......
[and] the assessment as aforesaid shall remain the lawful assessment, for purposes of city taxation, until the next assessment." It will be noticed that this does not say, as did the former act, "until the next triennial assessment"; on the contrary, it significantly drops the word "triennial," thus indicating an intention to provide for more than triennial assessments, as the preceding words in fact do.

The Act of June 23, 1919, P. L. 575, amending the acts mentioned in the last paragraph, reënacts the provision of the Act of 1909 last quoted. It is incorrect to say, as appellants insist, that the grant of authority to make new assessments contained therein is restricted to special circumstances and is intended merely to serve the same purposes as the revisory provisions of the Act of 1897, for not only is the language of the grant different and much broader (which is significant: 36 Cyc. 1165) than that contained in the Act of 1897, but both the Acts of 1909 and 1919, like the Act of 1901, expressly retain so much of the Act of 1897 as prescribes the duties of tax assessors. Then, again, the title is part of an act and aids, if needs be, in its construction (Moore v. Chartiers Valley Water Co., 216 Pa. 457, 461), and when we consider that the title to the Act of 1909 (the legislation which first made the change in the law here under construction) expressly gives notice that the statute is for the purpose of "enlarging and increasing the jurisdiction and powers" of tax assessors in cities of the second class, the significance of the new and additional language contained in that statute and repeated in the Act of 1919, and the intention thereby to give the tax assessors power not previously possessed by them, is plain.

The extent of the power conferred by the two last above mentioned acts is equally clear, and we agree with the construction placed on them by the court below, which, coinciding as it does with the ordinary meaning of the words employed therein, is the only intelligible

interpretation which can be given to the provision in question; moreover, this construction is supported by application of the established rule as to a consideration of the old law, the evil and the remedy, and, as above shown, it is consistent with the trend of statutory development in the general field of tax legislation affecting the cities of the Commonwealth. The question stated at the beginning of this opinion must be answered in the affirmative, and the court below did not err in so holding.

Finally, the court below, conceding the propriety of the remedy invoked by appellants and the right to enjoin the collection of a tax where the assessment on which it rests is basically illegal, dismissed the bill, not for want of jurisdiction but because it held the assessment in controversy to be "fully authorized by the Act of ......1919," in which opinion we agree; therefore it is unnecessary to enter upon the question of equity jurisdiction discussed in the briefs.

The decree is affirmed at cost of appellants.