STATE OF MISSOURI, EX REL., CROWN COACH COMPANY, A CORPORATION, ET AL., APPELLANTS, v. PUBLIC SERVICE COMMISSION OF MISSOURI, RESPONDENT.—179 S. W. (2d) 123.

Kansas City Court of Appeals. January 31, 1944.

288

*June R. Rose, C. J. Quimby, James P. Aylward, Ralph M. Russell* and *L. M. Crouch, Jr.* for appellants.

*John P. Randolph,* General Counsel, *Lester G. Scacat,* Assistant Counsel, Public Service Commission, *D. D. McDonald, Barak T. Mattingly* and *Douglas H. Jones* for respondent.

CAVE, J.—This is an appeal from a judgment of the Circuit Court of Cole County affirming an order of the Public Service Commission granting to All American Bus lines, Inc., a certificate of convenience and necessity to operate intra-state as a passenger-carrying motor carrier over a regular route between St. Louis, Missouri, and the Missouri-Kansas State Line about six miles west of Joplin, and over and along U. S. Highway No. 66.

All American Bus Lines, Inc., was the applicant before the Public Service Commission for such certificate and will be referred to hereafter as *"applicant"*; the protestants (appellants) which have appealed are Southwest Greyhound Lines, Inc., M. K. & O. Coach Lines, Inc., Crown Coach Company, and Washington Union, St. Louis Bus Company, and will be referred to as *"protestants"*. The Public Service Commission of Missouri, respondent, will be referred to as *"Commission"*.

The record of this case consists of some 800 printed pages, together with a large number of exhibits filed. We shall confine our reference to the evidence, the issues and the orders of the Commission, to the errors assigned by appellants (protestants).

The hearing was had before the Commission from October 6th to 10th, inclusive, 1942. At the time of the hearing and for some six or seven years prior thereto, the applicant had an interstate permit issued by the Commission, with authority to operate its busses across the State of Missouri, over Highway No. 66 between St. Louis, Missouri, and the Missouri-Kansas State Line. Its present application sought a certificate authorizing it to receive and discharge passengers at certain designated points or stations along said highway by its busses already operating thereon as interstate carriers. The Commission, by its order, authorized the applicant to so operate, the Circuit Court of Cole County affirmed such order, from which judgment appeal is perfected by protestants to this court.

There are eleven assignments of error, some of which seem to overlap and state substantially the same proposition in a different way. We shall discuss and decide the various questions urged without regard to the manner in which they have been numbered in the briefs.

Running through appellants' very able brief is the contention that the Commission, under the pleadings and evidence, should not and could not have authorized the issuance of the certificate of convenience and necessity which was issued; because the application stated and the evidence proved only a temporary need for the service authorized.

The application, in praying for a certificate of convenience and necessity, after reciting such formal matters as its incorporation, its principal office, equipment, schedules, plats and exhibits which were necessary to be filed, then alleges in part "that in addition to the foregoing, the United States of America is now engaged in a total all-out war . . ." and recites the orders of the government restricting the use of gasoline, automobile tires, the freezing of busses for transportation, and other similar regulatory matters, and alleges that there have been several large military camps and training centers established in Missouri, all of which has greatly increased the number of passengers being transported by public carriers; and that due to such government restrictions, the public generally has greatly reduced its use of privately owned and operated automobiles and is using in greater numbers than ever before public transportation conveyances. Protestants filed answers asserting they were giving adequate transportation service, and putting in issue the question of need for additional service; and alleged that present conditions were due to the war effort.

We deem it unnecessary to detail the evidence at great length and think it sufficient to say that a great number of witnesses testified as to the need of additional service. The record supports the finding of the Commission that "approximately 40 or 45 witnesses appeared in support of the application. They consisted of merchants, officials, businessmen, traveling salesmen, ordinary public travelers and in fact people from practically every walk of life. They came from almost all communities situated on or along U. S. Highway 66. The general tenor of the testimony of each and all of these witnesses was to the effect that most of them are frequent riders of busses; that they have travelled to and between many of the points on this highway; that they have observed the busses at bus depots and along the highway, and that the general condition of the bus traffic over and along this highway is crowded". That applicant was now operating across the State at about seventy per cent capacity. There was evidence to the contrary offered by protestants but we have no hesitancy in saying that the evidence preponderated in favor of the need for additional transportation at the time of the hearing.

Appellants argue that the order is unlawful because under the evidence the congested travel conditions which now exist are temporary, due to the war effort; that as soon as the war is over, we will again return to normal conditions. We doubt whether the words "temporary" and "permanent" are proper or accurate to describe and define the issues involved in this controversy. Bouvier defines "temporary" as "that which is to last for a limited time"; and "permanent", "does not always embrace the idea or absolute perpetuity". When the Commission heard this case, it had no information or assurance from any source, nor could it have, when the war

would end and normal conditions, if ever, would return; when the restrictions on the use of gasoline, rubber and transportation equipment would be lifted and its acquisition and use be made unlimited; or when, if ever, the large military establishments located in this State would be partially or totally abolished. We would all like to return to the "good old days" existing before the war, but, without any claim to the power of prophesy, we doubt such conditions will again exist. The day may not be far distant when transportation by bus will be as obsolete as the stage coach and the steamboat. What we mean to say is that the Commission, at the time of the hearing, was not required to speculate on or guess when present war conditions would cease and, if so, whether the demand for this additional service would, under such conditions, be required. The Commission was entitled to act and did act upon the evidence which showed the conditions then existing, and by taking into consideration other matters which we will later discuss, it was authorized to issue the certificate of convenience and necessity on the evidence then before it.

It is strenuously argued that when the war ceases and we return to a normal condition, there will be no public need for this certificate and that applicant would be in destructive competition with protestants which would result in injury to the travelling public. While it may not be necessary for us to decide such question at this time, it does appear clear that the Legislature anticipated such a situation in the field of public carriers, and by Section 5725, Revised Statutes 1939, provided that "The Commission may at any time, *for good cause*, suspend, and upon at least ten days' notice to the grantee of any certificate, and an opportunity to be heard, revoke, alter or amend any certificate issued under the provisions of this article". It is true that section also provides that if the Commission should find that any motor carrier is not giving convenient, efficient and sufficient service in accordance with the orders of the Commission, such carrier shall be given a reasonable time, not exceeding sixty days, to provide such service before its certificate may be cancelled or revoked, or a new one granted. But we are of the opinion that when the section is read as a whole, the Commission is authorized to revoke a certificate *for good cause*, which clause is much more inclusive than the proviso at the end of the section which relates to the failure of a carrier to give efficient and sufficient service. One of the very purposes of the Public Service Commission Act is to prevent or correct destructive competition of public utilities which will result in injury to the public, and we think such a situation would come within the term "for good cause".

When the pleadings and evidence are considered as a whole, we believe appellants are putting a too narrow construction on the issues made and tried and the findings and order of the Commission. It is now well established that technical rules of pleading are not applied

to applications or pleadings filed with the Public Service Commission. They are to be liberally construed. [State ex rel. M. K. & T. R. Co. v. Public Service Commission, 277 Mo. 175, and State ex rel. Kansas City Terminal v. Public Service Commission, 308 Mo. 359.]

The contention that only a temporary need was pleaded and proved is ruled against appellants.

Appellants next contend that the Commission was powerless to grant the certificate because "the Commission does not have power under the law to issue three certificates for identical service over the same route". This specific question has never been decided by the appellate courts of this State. The record discloses that between the points designated in the certificate there were outstanding, at the time of the hearing, two or more certificates already authorized. Between certain designated points or cities on Highway 66 there were more than two transportation companies rendering passenger service under certificates issued by the Commission, but we deem it unnecessary to here detail the services rendered on various segments of the highway, because some of the certificates were issued to such carriers under what is called the "grandfather" clause of the Motor Carrier Act of 1927 (See Sec. 11 thereof), i. e. such carriers received their certificates under such section because they were in operation over certain sections of this highway on the effective date of the Act. The naked question presented on this appeal is whether the Commission has statutory authority to issue more than two certificates of convenience and necessity over the same route.

Appellants argue that the Commission is a creature of the statute and therefore derives its power and authority from the statute. They ably review the history and background of the reasons for regulatory legislation of public utilities as it has grown and developed. In its broadest aspects, the general purpose of such regulatory legislation is to substitute regulated monoply for destructive competition. But the dominant thought and purpose of the policy is the protection of the public while the protection given the utility is merely incidental. [State ex rel. Electric Company of Missouri v. Atkinson et al., 275 Mo. 325; Pitcairn v. Public Service Commission, 111 S. W. (2d) 222.]

Our attention is specifically called to Sections 5724 (a) and 5725, *supra*. Appellants contend that when certain parts of Sections 5724 (a) and 5725 are read and construed together they must be construed to mean, and that the Legislature intended them to mean, that if one certificate had been issued to a carrier over a designated route the Commission could grant another certificate over the same route in event it found that the utility in the field was not rendering convenient, efficient and sufficient service, but before it could do that, the utility in the field should be given a reasonable time, not exceeding sixty days, to provide such service before a new certificate was granted over the

same route. The language relied on to justify such construction is (Sec. 5724 (a)):

"Provided, however, no vested right shall accrue to any certificate of convenience and necessity; and provided further, that the issuance of *a* certificate of convenience and necessity to one carrier shall not prohibit the granting of such certificate to *another* carrier over the same route if in the opinion of the Commission the public convenience and necessity will be promoted by so doing." (Italics ours.)

Section 5725 provides:

"No motor carrier authorized under the provisions of this article to operate within the State of Missouri shall abandon or discontinue any service established under the provisions of this article without an order of the Commission therefor; which said order shall be granted only by the Commission after hearing upon due notice. The Commission may at any time, for good cause, suspend, and upon at least ten days notice to the grantee of any certificate, and an opportunity to be heard, revoke, alter or amend any certificate issued under the provisions of the article: *Provided* that on finding of the Commission that any motor carrier does not give convenient, efficient and sufficient service in accordance with the orders of the Commission, such motor carrier shall be given a reasonable time, not more than sixty days, to provide such service before any existing certificate is canceled or revoked or a new one granted to *some other motor carrier* over the same route." (Italics ours.)

It is argued that when the statute provided for the issuance of "*a*" certificate that "a"' meant one, and that the Commission may grant a certificate to "another" or "some other" carrier means "one more, in addition". From this premise, appellants assert that the Commission is powerless to grant a certificate to more than two carriers over the same route regardless of what the evidence may show with respect to the service rendered the public. The argument being that if one or both carriers are not rendering efficient service, then one of the certificates must first be revoked as provided for in Section 5725, before another certificate can be granted.

We do not believe the statute should be so strictly construed. Section 5707, Revised Statutes 1939, of the Public Service Commission Law, of which these sections are a part, provides:

"The provisions of this chapter shall be liberally construed with a view to the public welfare, efficient facilities and substantial justice between patrons and public utilities".

Furthermore, Sections 652 and 653, Revised Statutes 1939, have a direct bearing on the construction which we should give in this case. Such sections provide:

"When any subject-matter, party or person is described or referred to by words importing the singular number . . . several matters and persons, . . . shall be deemed to be included.

"The rules prescribed in the last two sections shall apply, in all cases, unless it be otherwise specifically provided, or unless there be something in the subject or context repugnant to such construction."

The Supreme Court in banc in the case of State v. Long-Bell Lumber Co., 12 S. W. (2d) 64, discusses this matter in very pointed language, and we quote, l. c. 80:

"The word 'any' is not an unyielding term, but one which readily yields to the legislative intent as reflected by the context of the act. And when the context so indicates, the word may be construed to mean 'one or more', 'several', 'some', or 'an indefinite number,' etc. [1 Bouv. Law Dict., p. 205, title 'any'; Century Dictionary, vol. 1, page 253, title 'any'; Platt v. City of Payette, 19 Idaho, 470, 114 P. 25; West Chicago Park Commissioners v. McMullen, 134 Ill. 170, loc. cit. 179, 180, 25 N. E. 676, 10 L. R. A. 215; Glen Alden Coal Co. v. Scranton, 282 Pa. 45, loc. cit, 48, 127 A. 307; Pioneer Construction Co. v. State Bank, 60 Okl. 123, 158 P. 894; Klotz v. Bank, 78 Ind. App. 679, 134 N. E. 220, loc. cit. 222.]

"Furthermore, the applicatory rule of construction in force in Missouri would seem to leave no room for contention. We are admonished by statute to so construe statutory words importing the singular number as to include the plural (several) 'unless it be otherwise specially provided, or unless there be something in the subject or context repugnant to such construction.' [See Sections 7055 and 6056, R. S. 1919.]"

In the instant case, it certainly is not 'otherwise specially provided' that the singular form shall not include the plural meaning, nor is there anything 'in the subject or context repugnant to such construction'. It seems clear to us that the guiding star of the public service commission law and the dominating purpose to be accomplished by such regulation, is the promotion and conservation of the interests and convenience of the public. Section 5736 of the Bus and Truck Act specifically provides, "It is hereby declared that the legislation herein contained is enacted for the sole purpose of promoting and conserving the interests and convenience of the public, and that no right, privilege or permit granted or obtained under or by virtue of this article shall ever be construed as a vested right, privilege or permit; . . ."

With such purpose in mind, the Legislature delegated to the commission the authority to issue certificates "if in the opinion of the Commission the public convenience and necessity will be promoted by so doing." [Sec. 5724.] The Commission has a discretion in determining whether a certificate of convenience and necessity shall issue. Of course, it cannot act unlawfully or unreasonably; if so, the courts will correct such action. But the evidence in this case proved, and the commission so found, that the carriers who now have certificates over this same route are not giving, and due to certain govern-

mental restrictions are unable to give proper, efficient, and sufficient service to the travelling public. Are we to close our eyes to that fact, which is in effect conceded by appellants, and permit the inconvenience of the public described in the evidence to continue? Appellants say such condition is due to the war and because of war restrictions they are unable to correct them at this time and that it is only a temporary condition which will be corrected at the end of the war and when we have returned to normal conditions. We do not think that is a sufficient excuse, because, as we have said above, no one can now tell when such conditions will be brought to an end.

Appellants assert ''that from the beginning of the regulation in Missouri it has never been the law that the Commission could not grant one additional certificate of convenience and necessity when the utility was not rendering the proper service at a fair rate, but neither can any case be cited where for the identical service a utility was allowed to come in and compete with the utility in the field, if the utility in the field was rendering adequate service at fair rates''. Conceding that argument to be sound, nevertheless the evidence in this case is very substantial that the utilities operating under prior certificates are not rendering the public adequate and efficient service, and that applicants' busses were travelling across the State of Missouri on this highway under an interstate permit with thirty per cent of its seats vacant. Under such circumstances, do the statutes above referred to tie the hands of the Commission so that relief cannot be granted? We think not.

By statute, the Commission's discretion in issuing a certificate is to be controlled by three principal considerations: (1) The transportation service being furnished by other carriers; (2) the permanency and continuity of the proposed service; and (3) the effect which the proposed service may have upon other existing forms of transportation service. [State ex rel. Motor Bus Co. v. Public Service Commission, 324 Mo. 270.] We find in the instant case the Commission gave consideration to all three propositions and its conclusions are amply supported by the evidence.

Appellants next contend that the order of the Commission was unlawful because the Commission failed to find that public convenience and necessity would be promoted by the granting of the certificate; and failed to give consideration of the effect on other forms of transportation; and failed to take into consideration existing transportation facilities.

We have carefully read the lengthy and detailed findings of the Commission upon which the order authorizing the certificate is based, and are forced to the conclusion that there is no real merit in appellants' contention. The Commission details and analyzes the evidence at considerable length and in doing so discusses the need for additional service and the inability of present carriers to procure additional

equipment and facilities for serving the travelling public. The findings cannot be read without the reader being forced to the conclusion that the Commission, in arriving at its decision to authorize the certificate, considered existing transportation facilities and the effect the new certificate would have thereon, and that at this time and under present conditions, public convenience and necessity required additional transportation facilities. It is true the finding does not use the exact words ''we find that public convenience and necessity will be promoted by the granting of the certificate'', but we do not think it is necessary that the findings specifically use the quoted words if the effect and result of the findings clearly evidence that that is the conclusion of the Commission. We have read the cases cited and referred to by appellants and do not construe any of them to be so strict as to require the Commission to recite in its findings the above quoted words. Appellants renew their argument under this point that the Commission found only a temporary need and argue that public convenience and necessity cannot be based on a temporary need. What we have said disposes of that contention.

We repeat that when the findings and order of the Commission are read and construed as a whole it must be concluded that the Commission gave the evidence as to the service being rendered by the other carriers and the quality and extent thereof, the willingness·or ability of such carriers to furnish said transportation, the likelihood of the proposed service being permanent and continuous throughout twelve months of the year, and the effect which the proposed transportation to be rendered by the applicant would have on other forms of transportation service, due consideration, and yet found, under the evidence, that public convenience and necessity would be promoted by granting the certificate asked by the applicant, and that the likelihood was that the proposed service would be permanent and continuous throughout the twelve months of the year and in doing·so, also gave due consideration to the effect which such proposed service might have upon other forms of transportation service in the territory. [State ex rel. Pitcairn et al. v. Public Service Commission, *supra*, l. c. 229.]

Appellants also complain that the Commission, in its findings, misconstrued the provisions of Section 5725, concerning the right and authority of the Commission in the future to revoke or cancel outstanding certificates of convenience and necessity if application is made to do so and the facts justify it. We have discussed that question, *supra*.

Appellants next contend that the Commission unlawfully held it did not have authority to issue a temporary certificate. Since we hold that the application and the evidence in the record authorized the Commission to issue the certificate which was issued, it is unnecessary for us to discuss the hypothetical question of whether the Commission could have issued a temporary or time limited certificate. However,

we should add that the Legislature did not consider the Commission had authority to issue temporary certificates or permits because at its 1943 session it specifically authorized such to be done. [See Laws 1943, page 861.]

Under Points 7, 8 and 9, appellants argue that under all the evidence the order was unreasonable. Without again rehashing the testimony, it is our conclusion that there was very substantial evidence in the record to support the findings of the Commission and the order made, and we are not disposed to hold the authorization unreasonable.

The next contention is that it was error for the Commission to grant a certificate of convenience and necessity between the points of Carthage and Joplin and The Diamonds and St. Louis, because there was no evidence of any temporary or permanent need for additional service between such points on this highway. Taken as a whole, the evidence was not generally divided into the need for additional transportation between each specified point of stoppage on Highway 66. However, there was some evidence concerning the need at Carthage, Webb City, Joplin and Springfield. One witness testified "regarding the schedule from Carthage to Webb City to Joplin, the Public Service runs every hour. They can't take care of the traffic and there is a lot of times on Saturday and Sunday and pay nights, I don't think seventy-five busses would take care of the traffic. . . . I am particularly familiar with the service between Carthage and Joplin . . . from Carthage to Joplin and from Carthage to Springfield, possibly a lot go to Kansas City, hitch hiking and every other way, because they don't have transportation. . . . I know a lot of times you can't get to Carthage and Springfield. . . . Lots of times the All American (applicant) could put on the passengers when the Greyhound is running full and All American has several empty seats and the people come up and want to buy a ticket on these busses and I say we can't sell in the State of Missouri". Another witness testified, "regarding the transportation from Carthage to Joplin and points east and west on Highway No. 66, I think at the present time the present means of transportation is wholly inadequate." Another witness who had occasion to travel between Webb City and Carthage testified, "I think additional service would help a lot. I have not found the present service satisfactory. It is rather crowded. I have had to stand up several times". Other witnesses testified to like effect. It would serve no useful purpose to sift the evidence contained within the 700 pages of the record and the voluminous exhibits filed herewith and unnecessarily lengthen this opinion; but we do conclude that there was sufficient evidence of need of additional service between the points appellants complain of. We further note that appellants in their brief state in effect that they realize they are not giving the service which they would like to give and that it is not their fault, but is due to war restrictions and requirements.

To that we agree, and do not want to be understood as criticizing appellants or any other carrier serving that section of the State for not giving better and more efficient service. But because it is not being given and cannot be given under present conditions and that the public is in need of additional transportation service is the very basis for the authorization of this certificate.

Appellants argue that we should try this cause *de novo* and weigh the evidence as a suit in equity. But in State ex rel. Chicago Great Western v. Public Service Commission, 330 Mo. 719, 51 S. W. (2d) 73, the Supreme Court held to the contrary and, after discussing that contention at some length, said: (1. c. 76)

"The determinations of the Commission in this case were supported by substantial evidence and the orders not unreasonable or unlawful, and therefore are conclusive upon this court."

In State ex rel. Shepherd et al. v. Public Service Commission, 142 S. W. (2d) 346, this court said: (1. c. 347)

"(1) The order of the Public Service Commission is *prima facie,* lawful and reasonable (Sec. 5246, R. S. Mo. 1929, Mo. St. Ann., sec. 5246, p. 6672); and the burden of proof, in this case, rests upon respondents to show that said order of the Commission is unlawful or unreasonable. [Sec. 5247, R. S. Mo. 1929, Mo. St. Ann., sec. 5247, p. 6673; State ex rel. Pitcairn v. Public Service Commission, 232 Mo. App. 609, 110 S. W. (2d) 367, loc. cit. 370.]

"(2) Upon appeal to this court on a matter of this character we do not determine the question presented as though we were the Commission. We only determine whether or not the order made by the Commission is reasonable and lawful, in light of the facts and circumstances properly in evidence before it. To determine that the action of the Commission, in a matter falling within its discretionary powers, as this does, was unreasonable, we must find that the Commission's order is arbitrary, capricious, and without reasonable basis; and the burden of proving it so to be is on respondents. [State ex rel. Alton Trans. Co. v. Public Service Commission, 330 Mo. 1, 49 S. W. (2d) 614, loc. cit. 617.]"

Under the evidence in this case we would not be justified in holding that the order of the Commission was unlawful because there was no evidence to support it or that it is arbitrary and capricious. We rule this contention against appellants.

The last contention of appellants is that this cause should be reversed because of the enactment of a new section of the Public Service Commission law since the case was tried by the Commission and decided by the Circuit Court of Cole County. The new law referred to is found in Session Acts 1943, page 861, which became effective June 17, 1943. It is appellants' contention that the Commission now has the power and authority to grant a temporary certificate under this Act, and that this court should consider the now existing law

and·order the Commission to exercise its now undoubted authority to issue only a temporary certificate to which applicant is entitled. In support of that contention, appellants cite· State ex rel. Gaines v. Canada, 344 Mo. 1238, 131 S. W. (2d) 217, and Lober·v. Kansas City, 74 S. W. (2d) 815. From the Gaines case they quote, l. c. 219:

"It is, in general, true that the province of an appellate court is only to inquire whether a judgment, when rendered, is erroneous or not. But if, subsequent to the judgment, and before the decision·of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, for it is obligatory."

We recognize that doctrine, but it presupposes that there has been a positive change in a rule which must govern. In the instant case the Legislature, by the Act of 1943, merely broadened the power and authority of the Public Service Commission by authorizing it to issue a temporary certificate of necessity which power it theretofore did not have, so the Legislature said in the Act, but it did not destroy the discretion which existed at the time of the hearing to grant a certificate of necessity. Appellants say that they do not urge that this Act be made retrospective, but do urge that this court construe the law applicable to respondent's application and evidence in the light of the law as it exists at this time. As we understand such contention, appellants would have us reverse the case and direct the Commission to issue a temporary certificate under the new Act. To do so, considering our conclusion *supra,* would be substituting our opinion of what should be done in lieu of the discretion of the Commission. This we cannot do. The Supreme Court definitely settled that question in State ex rel. Motor Bus Company v. Public Service Commission, *supra,* l. c. 275, where it is said:

"It is true that all orders of the Commission are subject to judicial review, and that suits brought for such review must be "tried and determined as suits in equity". But after the chancellor has made his own finding of the facts the only application he can make of them is to determine from them whether the order under review is reasonable and lawful. If he finds it both reasonable and lawful it is his duty to affirm it; if he finds it either unreasonable or unlawful, he most set it aside. He cannot modify it or entirely displace it with one of his own, as was done by the circuit court in this case. [Railroad v. Public Service Commission, 266 Mo. 333, 346, 181 S. W. 61; State ex rel. v. Public Service Commission, 308 Mo. 359, 378, et seq., 272 S. W. 9571.] When an order is set aside the court may remand the cause to the commission for such further action *as it may desire to take;* the court oversteps the boundaries of its jurisdiction when it attempts to tell the commission what the action should be. There seems to be one exception to this: when the commission has excluded evidence that it should have received, the cause may be remanded with directions that it hear such evidence and then make a new order." [See also: State ex rel.

304

Potashnick Truck Co. v. Public Service Commission, 129 S. W. (2d) 69; and State ex rel. Detroit-Chicago Bus Co. v. Public Service Commission, *supra.*]

The principle announced in Lober v. Kansas City, *supra,* has no application to the point involved here. The point discussed and decided in that case was whether a ruling or decision of a trial court overruling a former case on the same subject where said ruling or should be reversed because of changes in the law as evidenced by overruling a former case on the same subject where said ruling or decision by the trial court was correct when made according to such overruled case. The opinion held that the action of the trial court would be ground for reversal because the law announced in the overruled case never was the law and that the case up for decision is decided the same as if such overruled case had never been written. Such is a correct statement of the law, but it has no application to the point now under consideration.

Appellants renew the argument that the evidence, at most, showed only a temporary need and that a temporary certificate is all it could be entitled to. What we have said, *supra,* disposes of this renewed contention.

Under the evidence in this case, we cannot say that the action of the Commission was unlawful or unreasonable, arbitrary and capricious. It follows that the judgment of the Circuit Court be and it is hereby affirmed. It is so ordered. *Bland, J.,* concurs; *Shain, P. J.,* absent.