## Neel, Insurance Commissioner, v. Mercer County

*M. B. Klinesmith,* for plaintiff.
*Leo H. McKay,* for defendant.

ROWLEY, P. J., January 23, 1947.—This matter is before the court upon an affidavit of defense raising questions of law.

Plaintiff, as statutory liquidator brought this action to recover from Mercer County assessments aggregating $777.27, levied by order of the Court of Common Pleas of Dauphin County upon it as a subscriber of Keystone Indemnity Exchange holding policy contracts issued from April 9, 1929, to May 18, 1933.

The order of assessment imposed an amount equal to one annual deposit premium on each policy issued to the subscriber during the specified period.

Defendant's affidavit of defense raising questions of law presents six questions. Five of these have been disposed of in other proceedings. Defendant concedes that but one unanswered question remains, which defendant states as follows:

"Is a county empowered to enter into a contract whereby it becomes an insurer as a member of an inter-insurance exchange?"

Perhaps the question may be more specifically stated thus: Does the term "corporation" as employed in section 1002 of the Act of May 17, 1921, P. L. 682, include a county?

Article X of that act is entitled "Reciprocal and Inter-Insurance Exchanges." Section 1002 of that article provides:

*"Corporations Authorized to Exchange Contracts.* Any corporation, now or hereafter organized under the laws of this Commonwealth, shall, ............... have full power and authority to exchange insurance contracts of the kind and character herein mentioned. The right to exchange such contracts is hereby declared to be incidental to the purpose for which such corporations are organized and as much granted as the rights and powers expressly conferred."

We are to decide whether the legislature had in mind a county when, in the foregoing enactment, it used the term "any corporation".

An examination of the unique relationship between a county and the Commonwealth may illuminate the point somewhat.

"The county is merely a sub-division of the State government. It is not a sovereign or an independent entity within the State. It is in its capacity a political sub-division, a subordinate branch of government; it cannot rebel against the acts of the sovereign power and refuse to obey them unless such orders violate the fundamental law—the constitution.

"Restraints on the legislative power of control over its political sub-divisions must be found in the constitution or they must rest in legislative discretion. A municipality cannot question the State's authority or discretion when dealing with affairs relating to government or the care of its property:

" 'Municipal corporations are agents of the State (Philadelphia v. Fox, 64 Pa. 169). invested with certain subordinate governmental functions for reasons of convenience and public policy. They are created, governed, and the extent of their powers determined by the legislature, and subject to change, repeal, or

total abolition at its will. They have no vested rights in their office, their charters, their corporate powers, or even their corporate existence. This is the universal rule of constitutional law, and in no state has it been more clearly expressed and more uniformly applied than in Pennsylvania.......... The fact that the action of the State towards its municipal agents may be unwise, unjust, oppressive, or violative of the natural or political rights of their citizens, is not one which can be made the basis of action by the judiciary': Com. v. Moir, 199 Pa. 534, 541": Commonwealth v. Walker et al., 305 Pa. 31, 34.

"Any question of right or power in the State to do or perform an act in relation to a given subject is a matter for the State to determine. The county as an agent or a subdivision of government directed by the State to perform an act in relation thereto cannot question the State's power unless the constitution is impugned, . . . an individual or body not so situated as a county may question it": Id, supra.

"It is true a county is not in a strict technical sense a municipal corporation. It is a public corporation erected by the state for political purposes. One of its chief objects is the furtherance of the general policy of the state at large, especially in the due administration of justice, the preservation of the public peace, etc. It lacks powers of legislation, which in some form and to some extent are always possessed by municipal corporations. A county is a public, as distinguished from a private corporation, and while it aids in the enforcement of the policy of the state, it regulates to some extent the local affairs of the people within its borders. It is sometimes called a quasi municipal corporation. *In any event it is a corporation;* it has its common or corporate seal; it acts through its duly constituted officers, and it may sue and be sued.": Chester County v. Brower, 117 Pa. 647, 655. (Italics supplied.)

"The county is a quasi-municipal corporation, which aids in the enforcement of the policy of the State: . . . Merely because to it have been delegated certain local rights of government 'does not sever it as a body from the State': Com. v. Brice, 22 Pa. 211. As distinguished from a municipal corporation, 'a county organization is created almost exclusively with a view to the policy of the state at large. . . . With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, and are in fact but a branch of the general administration of that policy.' ": Garr v. Fuls, 286 Pa. 137, 145.

We may assume that the legislature was aware that a county is a corporation and that it bears a peculiarly intimate relation to the Commonwealth; that the extent of the powers of a county is determined by the legislature; and that the county functions, within its limited field, only in the manner authorized or directed by the legislature.

The State has the full authority and discretion in dealing with affairs relating to government and the care of its property. The county is only a subordinate branch of the State Government which must look to the latter for authority and direction. This authority and direction are to be found in statutes enacted by the legislature.

By the Act of 1921, P. L. 682, the Commonwealth conferred its blessing upon reciprocal and inter-insurance exchange. Section 1001 authorized "Individuals, partnerships and corporations of this Commonwealth" to "exchange reciprocal or inter-insurance contracts".

Defendant cites some authorities for the proposition that the term "corporations" usually refers to private corporations only. Ordinarily the word does not embrace municipal corporations.

It was held, in Kearny v. Jersey City, 78 N. J. L. 77, 73 Atl. 110, that a statute forbidding, "any person, firm or corporation to supply water . . ." did not include a municipal corporation, because "The collocation of corporation . . . with the words 'person' and 'firm' indicates that a private corporation and not a municipal corporation is meant, . . ."

If the authority of the county to exchange reciprocal insurance contracts rested solely upon section 1001, supra, the question might not be free from doubt. But the legislature removed all doubt by enactment of section 1002 which declares:

"*Corporations Authorized to Exchange Contracts.* Any corporation, now or hereafter organized under the laws of this Commonwealth shall . . . have full power and authority to exchange insurance contracts of the kind and character herein mentioned."

It would be difficult to find language more general and embracing than that here employed.

" 'In affirmative sentences, *any* being indeterminate in application, in effect has reference to every unit of the sort mentioned, and thus may be nearly equivalent to *every;* as *any* school boy should know that; *any* attempt to evade the law will be resisted.' Century Dictionary": Commonwealth v. Wiswesser, 124 Pa. Superior Ct. 251, 265.

Words of definite and precise meaning, as commonly understood, best disclose and reveal the intention, object and purpose of the user thereof.

" 'The word "any" is frequently used in the sense of "all" or "every", and when thus used has a very comprehensive meaning' ": 2 Am. & Eng. Enc. Law. (2d ed.) 414; 3 Cooke's Juris 232. The words "any railroad" were so construed by the Federal Supreme Court in Chicot County v. Lewis, 103 U. S. 164, 167, the court saying: "The power given is to subscribe to any railroad; this includes all railroads in the state, without restriction."

"In construing an Act of Assembly in Williams v. Ivory, 173 Pa. 536, 542, we said: 'Any person' means 'every person'; this construction was followed in Peterson v. Delaware River Ferry, 190 Pa. 364, 365. In Buckwalter v. Black Rock Bridge Co., 38 Pa. 281, 287, 'any damages' was held to mean 'all damages' ": Glen Alden Coal Co. et al. v. Scranton et al., 282 Pa. 45, 48.

" 'Any' means 'all', and therefore comprehends all mortgages against such corporation, be they for purchase money or otherwise": Harper v. Consol. Rubber Co. 284, Pa. 444, 453.

"Any . . . means all". Buckwalter v. Black Rock Bridge Co., 38 Pa. 281.

"The word 'any' means 'one indifferently out of a number' (Webster's Collegiate Dictionary), . . ." Groninger's Est., 268 Pa. 184, 187. "The words 'any court,' thus used in the broadest form and fullest sense, . . .": C. & R. Turnpike Co. v. McNamara, 72 Pa. 278, 281.

Any. "Being one indiscriminately of whatever kind; no matter what one": Webster's Collegiate Dictionary (5th Ed.).

In Williams v. Ivory, 173 Pa. 536, a minor in order to obtain release from imprisonment made an assignment of his property for the benefit of his creditors. Subsequently he sought to avoid the effect of the assignment by declaring that he was a minor when he executed it.

The act under which he assigned provided (p. 541):

"Any person . . . may present a petition . . . praying that he may assign his property and have the benefit of the provisions of this act."

The court, declaring that "any person" means "every person", held the assignment valid notwithstanding the minority of the assignor. See also Peterson v. The Delaware River Ferry Co., 190 Pa. 364

Article V, sec. 3, of the Constitution of Pennsylvania confers original jurisdiction upon the Supreme

Court "where a corporation is a party defendant". In Wentz v. Philadelphia et al., 301 Pa. 261, the court held that the term "corporation" meant both private and municipal corporations, citing Wheeler et al. v. Philadelphia et al., 77 Pa. 338, where Justice Agnew said (pp. 344, 345):

"Under the 3d section of the 5th Article of the New Constitution, the Supreme Court 'shall have original jurisdiction in cases of injunction where a corporation is a party defendant'. Did the convention mean by the word 'corporation' one class of corporations only, and to confine the exercise of the power of injunction to private corporations? It did not say so. Did it mean so? It is a word of known legal signification, embracing public and private corporations. If private only were intended, it is a result of mere inference. On what ground can we infer that the convention used a term of art and yet meant what it did not say? That body was composed largely of lawyers (our legislature includes lawyers) many of great professional eminence and some professionally familiar with corporations. We must presume they used the term 'corporation' in view of its legal meaning, . . .

"If it were the intention of the convention to restrict the power of injunction to *private* corporations, it was absolutely necessary to say so, or else by every rule of sound interpretation the power exists as to corporations generally."

Defendant argues that section 101 of the Act of 1921, P. L. 682, which provides: "The word 'exchange', . . . shall be construed to include only individuals, partnerships, and corporations, authorized by the laws of the Commonwealth to exchange . . . reciprocal insurance contracts", implies that certain entities are not authorized to exchange contracts. In our opinion, that section—like the preceding paragraph applying to "associations"—emphasizes that each must comply

with the prerequisites specified in the statute to entitle it to the benefits of the act.

Until the subscribers (whether individuals, partnerships or corporations) filed the required information with the insurance commissioner, they did not constitute an exchange and were not authorized to exchange reciprocal insurance contracts under the Act of 1921.

The authority of the commissioners to contract for contingent liability is attacked. The answer is that this liability is imposed by law, independent of contract. Our Supreme Court has sustained the contingent liability of the subscriber notwithstanding a declaration against such liability clearly expressed in his policy: Commonwealth ex rel. v. Keystone Indemnity Exchange, 335 Pa. 333.

Public officers charged with the care of public property can scarcely escape criticism for participation in insurance contracts which involve a contingent liability.

Such criticism may be tempered when it is remembered that the legislature and the executive invited participation, by launching an expansive plan for reciprocal insurance, and undertaking to supervise the reciprocal exchange, and safeguard the subscribers through the insurance commissioner.

Scarcely anyone will commend the legislature and the executive for the enactment that made it so simple to delude a great multitude of our citizens; nevertheless, the power of the legislature and the executive to do so is unquestionable. Similarly, we may not approve the judgment of the county commissioners in contracting for reciprocal insurance but we cannot deny their power to do so.

## Order

And now, January 23, 1947, this matter came on for argument upon an affidavit of defense raising ques-

tions of law, and the same was argued, whereupon, after due consideration, it is ordered, adjudged and decreed that the same be overruled and defendant directed to file an affidavit of defense upon the merits.