Charles Lambíase, J.
Petitioner prays herein “ for an order directing William B. Woods as director of Public Welfare for the County of Monroe to afford him such assistance as is required according to his needs and that of the members of his family, pending the hearing and determination of the appeal now before the Department of Social Welfare of the State of New York, and for such other relief as this court deems proper.” (Petition.)
Both parties have considered this application as one for an order pursuant to article 78 of the Civil Practice Act of the State of New York to compel respondent, as Director of Public Welfare of the County of Monroe, New York, to grant the relief set forth in the immediately foregoing paragraph. Respondent has raised no question as to the propriety of the nature of the proceeding. As we understand it, they have acquiesced in the *733 proceeding as conducted and seek a disposition of the application upon the merits.
Petitioner resides at No. 22 Henry Street, Rochester, New York, with his wife and nine children, the children ranging in age from 20 months to 15 years. Petitioner’s wife, it has been stated, is in her sixth month of pregnancy. He and his family arrived in New York State on September 9, 1961 after having worked in Maryland for two months subsequent to leaving their home in Winter Garden, Florida. He came to Orleans County, New York, where he and his wife worked briefly as migrant workers, and where at some time during his stay he was granted emergency relief as such. It does not appear when petitioner and his family came to the City of Rochester, County of Monroe, New York. However, it is a fact that public assistance and care was rendered to him under the aid to dependent children category amounting to $339.95 representing assistance and care on a temporary emergency basis covering the period from October 27,1961 through December 9, 1961, the date that the last public assistance and care was rendered to him. On that date he and his wife were involved in an automobile accident in which they claimed to have sustained personal injuries, disposition of which claims had not been made as of the time of the argument.
The following letter dated January 15, 1962 was sent to petitioner, was received by him, and was produced by him on the argument: ‘ ‘ This is to notify you that your application for public assistance, to the Monroe County Department of Social Welfare, has been denied and that you are found to be, under the law, undeserving of and ineligible for assistance under the applicable provision of the Social Welfare Law of the State of New York, and particularly section 139A ’’ [sic]. This letter was signed by Charles Wm. Caruana “ Of Legal Counsel to Welfare Dept.” of the County of Monroe on behalf of the respondent as Director of Public Welfare. The sending of this written notice was required by statute to which reference is hereinafter made. Although there had been some discussion between the parties as to petitioner’s status, the requirements of the statute in respect to notice of official determination (Social Welfare Law, § 139-a, subd. 6) had not been theretofore complied with except that, of course, petitioner’s grants for public assistance and care had been terminated as hereinbefore related.
Previous to the receipt of said written letter or notice and on or about the 28th day of December, 1961 petitioner filed with the area office of the New York State Department of Social Welfare a formal notice of appeal in which he requested a hearing to review the determination of the respondent ‘ ‘ that neither *734 petitioner nor any member of his family is deserving of relief money.” (Petition, par. Fourth in part). It does not appear that since the written notice to him that petitioner has filed any other notice of appeal to the said department demanding a hearing. No point, however, has been made of that by respondent, and it is our understanding that both parties are considering the matter as being up on appeal before the New York State Social Welfare Department.
That petitioner and his family, that is, his wife and children dependent upon him, were ‘1 in immediate need of public assistance or care ” at the time of the return of this application is not the subject of dispute. That fact, for the purposes of this application is conceded. Furthermore, it was not contradicted that at the time of the hearing before us petitioner was being evicted from his abode and that except for the kind but irregular and uncertain bounty of others under no legal duty or obligation to give assistance and care to him and his family, petitioner and his dependents then were and now are in immediate need.
It is the position of the petitioner that within the purview of section 139-a of the Social Welfare Law of the State of New York, and particularly subdivisions 5, 6 and 7 thereof, he is to be granted public assistance or care for himself and his wife and family “ on a temporary emergency basis ” (subd. 5) until the hearing and determination of the review requested by him now pending before the Department of Social Welfare of the State of New York. Despondent, on the other hand, contends that under said section petitioner has received all the public assistance or care for himself and for the persons dependent upon him that may be given to him under any classification; that he (respondent) has complied with said section 139-a, and that petitioner has had all the benefits thereof afforded him; that bus tickets for transportation back to Winter Garden, Florida, were provided on November 24,1961, the State of Florida having officially acknowledged that petitioner and his family have a residence' in that State and having authorized the return of petitioner and his family to said State, and having acknowledged that petitioner and his family are eligible for public assistance in that State; that nowhere has petitioner shown a clear legal right for public assistance from the County of Monroe Public Welfare District; and that the proceedings should be dismissed. It appears that the bus tickets were turned over to the case worker in charge of petitioner’s matter, and that the tickets were later returned unused.
*735 Therefore, as we view the matter before us, the sole question is one of law, viz.: Is petitioner entitled until the hearing and determination of his appeal to public assistance or care on a temporary emergency basis for himself and for his wife and children who are dependent upon him?
To sustain a positive order in the nature of mandamus petitioner must demonstrate a clear legal right to the relief sought. ‘ ‘ A fundamental rule is that an applicant for the writ of mandamus must, by written and verified allegations, present to the court facts which, if true and unavoided by the defensive facts, prove that he is under a grievance or injury which the writ would remedy and that he is entitled to that remedy. A writ of mandamus issues only where a clear legal right is made to appear. [Citing cases.] ” (Matter of Whitman, 225 N. Y. 1, 8.) We believe that the posture of the ease is such that the form of the remedy sought herein is proper, and as hereinbefore stated, such is also the position taken by the parties as we understand it. This does not, of course, mean that respondent agrees that the remedy should be granted.
By section 1 of article XVII of the Constitution of the State of New York, adopted by the Constitutional Convention of 1938, and approved by the People on November 8,1938, it is provided that: 1 ‘ The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine.” (See, also, N. Y. Const., art. VIII, § 1.)
On approving chapter 200 of the Laws of 1946 which amended generally the Social Welfare Law which had become effective March 1,1941, then Governor Thomas E. Dewey of the State of New York, on March 22, 1946, stated in part:
“ When this legislation becomes fully effective all persons in need of welfare assistance will be able to obtain it through a single office. Different members of a needy family will be able to obtain assistance under different programs, all at a single point of application. Responsibility of local units of government will be in some wise extend to all programs of assistance. Special latitude of action is provided for emergency assistance. This is a humane and efficient plan, which, for the first time in our State brings social welfare services on an integrated basis to those in need.
“Moreover, this bill implements that part of the recommendations of the Commission on Municipal Revenues as provided for increasing the state share of home relief to 80 per cent of the cost and the comparable increases in state reimbursement on old *736 age assistance, aid to the blind and aid to dependent children. This is one of the most important of the State’s programs for the stabilization of municipal finance during bad times as well as good times.” (1946 N. Y. Legis. Annual, p. 288.)
This is the basic social welfare responsibility of the State of New York and is presently implemented by its Social Welfare Law.
Effective July 1, 1961, section 139-a entitled “ Special provisions to avoid abuse of assistance and care ” became a- part of the Social Welfare Law of the State of New York. The legislative declaration in connection therewith (L. 1961, eh. 468, § 1) provided: ‘1 The constitutional mandate and the moral obligation of the state to render care and assistance to those lacking the means or the ability to maintain themselves are hereby recognized and re-affirmed. However, as welfare programs expand, it becomes increasingly necessary to insure that only those deserving of aid are granted such assistance. For an undeserved benefit, if paid, weakens the very system for those it was intended to protect. The legislature hereby finds it in the public interest and declares it to be the public policy of the state that the public welfare system should not be abused by persons coming to this state with the intent of being supported at public expense and for the purpose of receiving such public care and assistance. It is the intent of the legislature that this act be strictly enforced and administered by public welfare officials.”
After setting forth provisions relating to the quoted caption, there are set forth therein the following subdivisions:
“ 5. Notwithstanding any inconsistent provision of this section, an applicant in immediate need of public assistance or care for himself or for any person dependent upon him shall be granted such assistance or care on a temporary emergency basis.
“6. If the public welfare official determines that the applicant is undeserving of and ineligible for assistance hereunder, he shall notify the applicant of his decision in writing.
“7. If any application is not acted upon by the public welfare official within thirty days after the filing of the application or if the applicant is determined by the public welfare official to be undeserving of and ineligible for assistance, the applicant may appeal to the department, which upon receipt of the appeal shall review the case, shall give the applicant making the appeal an opportunity for a fair hearing thereon- and within thirty days render its decision. The department may also, on its own motion, review any such decision made, or any case in which a decision has not been made by the public welfare official within *737 the time specified. All decisions of the department shall be binding upon the public welfare districts involved and shall be complied with by the public welfare officials thereof.”
It would seem that subdivision 5 above mentioned is consonant with the State policy of special latitude of action with reference to “ emergency assistance ” mentioned in Governor Dewey’s statement, and that it tends to encourage rather than to discourage humanitarian treatment in such cases. We do not comment on subdivision 6 except to say that it seems to us that where public assistance and care has been cut off definitely, a rejected applicant need not wait for notification of rejection in writing before taking his appeal in order to get the machinery for State review and ultimate determination into action. Provision is made in said subdivision 7 for appeal to, for review by, and for “ an opportunity for a fair hearing thereon ” before, the State Department of Social Welfare. Furthermore, under said subdivision review of any decision made, or of any case in which decision has not been made by the public welfare official within the time specified therein may be initiated by the State Department of Public Welfare. Binding effect of all decisions of the State Social Welfare Department upon the public welfare district involved is in said subdivision proclaimed, and compliance therewith by the public welfare officials thereof is exacted. A time table for action by public welfare officials and by the State Department of Social Welfare is therein also provided, although we note that in connection with the appeal there is no specification of time within which the appeal must be taken.
“ A ‘ hearing ’ contemplates the right to be present and to put forth one’s contentions by proof and argument (Black’s Law Dictionary, p. 882, and cases cited). This State’s courts have always been faithful to these concepts.” (People v. Richetti, 302 N. Y. 290, 297.) To make a solemn assertion to one circumstanced as is the petitioner of the availability in New York State of “an opportunity for a fair hearing ” which an enlightened Legislature, in the exercise of its discretion has made in subdivision 7, and then in practice in connection therewith to extend to petitioner the alternative of remaining in the State of New York pending the hearing and determination thereon without public assistance or care — although in immediate need — or of returning to Florida under which circumstance he would undoubtedly be prevented from being present at the hearing and from putting forth his contentions by proof and argument, is to extend the liberal right provided for under subdivision 7 with one hand and to take it away with the other. Availability *738 of héaring under such circumstances, it sééms to us, would be but a sham ór prétense. Due process insists on a real hearing “ not a sham or U pretense ”. (Palko v. Connecticut) 302 U. S. 319, 327.)
IS People v. Richetti (302 N. Y. 290, 297, supra) the Court qubtés -from á notable 'speech by Judge Fulo of said court on “ The Writ of -Error Ceram Nobis ” (N. Y. L. J., June 6, 7, 1947) as follows: “ improbable or Unbelievable though the allegations may seem — though they ‘ may tal credulity’ — the defendant is entitled to a hearing ’ ’.
Nowhere in the statute do we fin'd a definition Of “ emergency W§ must, therefore, resort tb the general Understanding of the word. Webster’s Net# International Dictionary, 2d edition, defines it as “ añ uiíforséen combination of Circumstances which Sails for immediate action”. Synonyms aré' given as “ crisis, pinch, strait, necessity”. (See Lutzkn v. City of Rochester, 7 A D 2d 498:) Wé do not think that it may he argued Successfully that there is no emergency involved herein. In fact, wé do not Understand that it is argued that ati emergency does not exist, hut rather it is respondent’s position that the emergency iS Of petitioner’s own making thereby absolving respondent from any responsibility.
Wé álsó find no definition of “temporary” in the Statute: Th¿ word is defined in Webster’s New International Dictionary, 2d éditión, ás meaning ‘ ‘ lasting for a timé only; existing Or continuing for a limited time; not permanent; ephemeral; transitory ; is opposed to permanent, lasting ”. Definition of temporary to the same purport is also found in Black’s Law Dictionary and iñ Bbuvier’s Láw Dictionary.
We conclude that petitioner is entitled to an Order directing respondent William B: Woods, US Director Of Public Welfare of the County of M'oiirbe, New York, to grant tb petitioner fdf himself find for the persons dependent upon him. Such public assistance and Cáré as is provided by law on a temporary emergency basis pending the hearing' and determination of the appeal now héforé the Department Of Social Welfare of the State of New York provided that düring said period petitioner and those dependent upon him are in immediate néed of Stich public assistance and care. Such holding would best sbém tb implement the sálútáry program of providing integrated welfare service with special latitude for emergency assistance (G-dverntir’s Memorandum, March 22, 1946), and tends to encourage rather than disconrUge humanitarian treatment in such Cases.
In arriving at the fbregoing Conclusion wé have not lost sight of the express legislative declaration in connection with section *739 139-a that “ It is the intent of the legislature that this act be strictly enforced and administered by public welfare officials.” Having in mind the mischief intended to be remedied by said section, nevertheless, in pur opinion, the policy of the declaration should and can be honored without depriving those affected thereby of any right provided for in said section.
We have one last observation to make, and that is that under the provisions of section 139-a aforesaid a situation such as the one before us is entirely in the control of the County Public Welfare District involved and of the State Social Welfare Department. The resolution and determination of this problem and of any similar ones may be accelerated and advanced with such convenient expedition on the part of such district and department as may be given to it commensurate with the needs of the particular case.