the rest of her bills. From the testimony this court heard, in making these substantial gifts to the one daughter who was furnishing her with comfortable and considerate care decedent was reacting quite normally. Her free agency was quite intact during the periods in which she made the gifts in question. Undue influence certainly cannot be based on mere gratitude, affection, or esteem.

In accordance with the prayer of plaintiff's petition it will be duly declared that the estate of Eleanora C. Krimm, deceased, has no interest in any of the funds given by the decedent to her daughter, Esther (or Helen Esther) Zimmerman.

*Judgment accordingly.*

In re Custody of Smelser.

42

(No. 2673—Decided October 10, 1969.)

Juvenile Division, Common Pleas Court of Preble County.

*Messrs. Earley & Earley,* for the mother.
*Messrs. Bennett & Bennett,* for the father.

ZIEGEL, J. On March 6, 1968, after a proceeding to determine the custody of four children under Section 2151.-23(A) (2), Revised Code, this court placed the two younger children with their mother, and the two older children with their father. This matter now pends on a motion filed by the mother asking that the custody of one of the children previously placed with the father, John L. Smelser, be changed and given to her for the reason that he is now of an age whereby he would be entitled to make an election with which parent he chooses to live. Section 3109.04, Revised Code. At the hearing this lad opened the testimony and stated that he is now fifteen years old, and that he desires to live with his mother. Movant thereupon rested.

Counsel for the father then moved for a dismissal on the ground that no change of conditions had been established. At the hearing this motion was overruled. In view of what follows, I wish to elaborate on that ruling. The leading case on this subject, oft cited, is *Dailey* v. *Dailey* (1945), 146 Ohio St. 93. As will more fully appear as this opinion progresses, some of the Dailey ruling has been discredited by an amendment to a controlling statute. Insofar as its holding on the need for showing a change of conditions and what might constitute such change in the case at bar, the case is still sound. "After the custody of children is once fixed by adjudication, the court will not

thereafter modify this custodial status unless such action is warranted by a change in conditions or by the discovery of material facts existent at the time of the previous order, and then unknown to the court. A child's arrival at the age of ten (the statutory age when Dailey was decided) accompanied by an expression of preference for the parent who does not presently have custody and who would not be disqualified by unfitness would be a change in conditions. * * *"

While at this stage of the proceedings the mother did not offer any evidence showing her fitness, such is deemed unnecessary since there is a presumption that every person is fit, the burden of proving unfitness being upon the person who asserts it. *Schwalenberg* v. *Schwalenberg* (1940), 65 Ohio App. 217. Thus, with the presentation by the child of fourteen or older of his selection of the parent he prefers to be his custodian, a prima facie case for the granting of the motion to change custody is established, and in the absence of any other testimony the motion would have to be sustained.

Thereafter the testimony developed that since the original custody order the parties were divorced and each of them has since remarried. The present living quarters and manner of living of each of these parties is above significant reproach, so that if this matter were before this court for an initial determination of custody without having any right of selection involved I would have no hesitancy in placing any child with either party. On the plus side for the father the evidence showed that he is a college man with a graduate degree, that at the present time he is a secondary school teacher and an elementary school guidance counsellor, that he has had considerable professional experience working with boys, and that he definitely appreciates the value of an education. On the minus side for the mother is the fact that among others living in the home where she and her new husband now reside is her son by a former marriage, Tim Davis, age nineteen. Tim is a high shool drop-out who has a juvenile court record. John testified that on at least one occasion Tim has offered him whiskey, and that on one occasion he

saw Tim drunk. The mother has another son by her first husband who also dropped out of high school before graduating. In this connection it should be pointed out that at the time of Tim's difficulties and of both these boys quitting school before graduation, John's parents were living together, and the mother never questioned the de facto authority of this father over his step-sons. On this set of facts counsel for the father contends that this motion to change custody should be dismissed for the reason that, even though the child in question may be of an age where he is permitted to make a selection his best interests require that he be continued in the custody of his father.

Section 3109.04, Revised Code, provides in part that "Upon hearing the testimony of either or both parents, corroborated by other proof, the court shall decide which of them shall have the care, custody, and control of the offspring, taking into account that which would be for their best interest, except that if any child is fourteen years of age or more, it may be allowed to choose which parent it prefers to live with, unless the court finds that the parent so selected is unfitted to take charge. The provisions permitting a child to choose the parent with whom it desires to live shall apply also to proceedings for modification of former order of the court fixing custody. * * *'' Prior to January 1, 1946, this statute, then Section 8033, General Code, read somewhat differently, and as follows: ''* * * except that, if such children be *ten* years of age or more, they *must* be allowed to choose which parent they prefer to live with, unless the parent so selected, *by reason of moral depravity, habitual drunkenness or incapacity,* be unfitted to take charge of such children. * * *'' (Emphasis ours.)

Counsel for the father first argues that since the present proceeding is brought under the juvenile court code, rather than under the provisions of Section 3105.21, Revised Code, providing for the determination of the custody of children in divorce, annulment, or alimony only actions which specifically refers to Section 3109.04, Revised Code, this statute does not apply. It is to be noted that Chapter 3109. does not mention as to what court it applies. It just contains general rules applicable to any court which

has a subject matter to consider within its scope, in the absence of other specific statutory rules. The word "custody" as used in Section 3109.04, Revised Code, has the same meaning as the word used in Sections 2151.23(A) (2), and 3105.21, Revised Code, so that the former section is equally applicable to the other two. *Kolody* v. *Kolody* (1960), 110 Ohio App. 260; *Patton* v. *Patton* (1963), 1 Ohio App. 2d 1. A distinction must be made between a determination of custody under Section 2151.23(A) (2), Revised Code, and a placement or disposition of a child after a finding that such child is neglected, dependent, or delinquent under Section 2151.23(A) (1), Revised Code, which is controlled by Section 2151.35, Revised Code. Section 3109.04, Revised Code, is thus applicable to a proceeding to determine custody brought under the Juvenile Court Code.

In 1945 the Supreme Court decided *Dailey* v. *Dailey, supra,* holding that Section 8033, General Code, part of which is quoted above, is mandatory insofar as it allows children ten years of age or more to choose the parent with whom they prefer to live, except that the court shall determine their custodian when the parent so selected is unfitted by reason of moral depravity, habitual drunkenness or incapacity. Thereafter the statute was amended drastically, so that the mandatory word "must" in "be allowed to choose which parent they prefer to live with" was changed to the permissive "may," the age of choice was changed from ten to fourteen, and statutory definition of "unfitted" was eliminated. Since that date only one case has been found which considers the 1946 amendments, *Watson* v. *Watson* (1956), 76 Ohio Law Abs. 348, where in refusing to grant a motion for a change of custody based on the selection of a minor over fourteen the court commented on the statutory changes. The factual posture of *Watson,* however, is such that conceivably the court could have reached the same conclusion under the former statute since there was evidence of a moral depravity on the part of the parent selected.

*Watson* did point out, however, that "the welfare of (the child) is of the paramount importance, and the ques-

tion of her welfare under all the circumstances shown by the evidence is the important matter to be decided by the trial judge.'' The selection of which parent a child of fourteen or over prefers to live with is certainly one of the circumstances shown by the evidence, to be considered along with all other evidence. The question then, under the language of Section 3109.04, Revised Code, is what weight is to be given to the selection of the child of fourteen or over.

Even before the original enactment of the predecessor to Section 3109.04, Revised Code, in 1893 (Section 3140-1, Revised Statutes), the Supreme Court Commission considered in *Clark* v. *Bayer*, 32 Ohio St. 299, at pg. 305, decided in 1877, that ''When the question of custody arises between the father and mother * * * as to rightful custody, and the minor is of an age to make an intelligent and discreet choice, courts will respect the minor's election.'' No mention is made here of any age of selection, it being up to the court to determine whether such child ''is of an age to make an intelligent and discreet choice.'' Although it has been held that a court may err in relying too heavily on the choice of a young child (one eight years old), *Newman* v. *Newman*, 61 Ohio Law Abs. 438, this court, and I am certain many others in this state, where the custody of a child is a matter for determination, regularly interviews such child even though he may be under fourteen years of age, and gives such weight to his selection, if any is made, as his mental capacity, age, maturity, and intelligence dictates. See annotation, 4 A. L. R. 3d 1396, at 1426 ff.

When the child becomes fourteen years old, the common practice of interviewing children receives statutory support. Although the language of the statute is couched in permissive terms, obviously the General Assembly intended that when a child reaches fourteen years increased weight should be given to his selection of which parent he desires to live with, otherwise no statute would have been necessary. *Clark* v. *Bayer, supra*, in the absence of a statute, provides all the direction any court needs. While the 1946 amendment to the statute removed some of the

mandatory character of the child's selection, and while it made possible the determination that a parent selected is unfitted for reasons other than moral, and while the best interest of the child is still the pole star upon which the court must concentrate, the selection of a child fourteen years of age or over is a major factor to consider in determining what is for his best interest. Even though the child is over fourteen, however, in view of the permissive nature of the statute, the actual weight the court gives to the child's selection depends upon the same factors indicated above with regard to a child under fourteen—his mental capacity, maturity and intelligence.

In the case at bar, John L. Smelser is fifteen, not just fourteen, years old. His appearance as a witness, the way in which he answered the questions put to him, and the testimony of his academic record indicates that he is a lad of normal educational background, maturity, and intelligence. His selection of his mother as the one whom he preferred to live with was made calmly without any rancor towards his father. Conceivably, in the absence of any right of choice, a court might have considered the father's plus factors and the mother's minus factors and might have arrived at a different conclusion. These plus and minus factors, however, are not of sufficient significance to warrant the court in ignoring the choice of this fifteen year old young man.

Considering all of the circumstances shown by the evidence, and concluding that neither parent is unfitted to receive custody, in this particular case the best interests of John L. Smelser require that his preference be honored. The motion to change the custody of John L. Smelser from his father to his mother will be sustained, and John L. Smelser will be placed in the custody of his mother with reasonable rights of visitation reserved to the father. Since no testimony relative to support for this lad while he is living with his mouther was introduced at the original hearing, orders on that point will be held in abeyance pending receipt of such evidence.

*Judgment accordingly.*