Leininger, Appellant, *v.* Leininger et al., Appellees.

(No. 240—Decided April 11, 1975.)

Mr. *Robert H. Saxer,* for appellant.
Mr. *Jack D. Gooding* and Mr. *James L. Frey,* for appellees.

Wiley, J. On September 4, 1974, in the Juvenile Court of Fulton County, the appellant, William Dwight Leininger, filed a motion to modify the temporary order of care, custody and control of his minor child, Keith Leininger, asking that custody be restored to him. After a full hearing, the trial court entered judgment that the best interests of the child would be served by his remaining in the temporary care, custody and control of the custodian, Harvey W. Beck. It is from this judgment that this appeal is taken.

There were two assignments of error:

"1. The trial court erred in overruling appellant's motion for change of custody of the minor child Keith Leininger, without finding the appellant was not a suitable parent.

"2. The trial court erred in continuing temporary custody of the minor child with a person other than a relative, when a relative was available for temporary custody to the court."

On July 13, 1968, the appellant, by a divorce decree in the Court of Common Pleas of Fulton County, was granted the custody of the minor child of the parties, Keith Leininger. Thereafter, on December 7, 1970, the Court of Common Pleas certified all matters to the juvenile division. See R. C. 3109.06.

The minor child was in the home of appellee Harvey W. Beck off and on from July 1968 until December 1970. Thereafter, the minor child remained continuously in the home of Harvey W. Beck until August 13, 1973, with the consent and the apparent request of the appellant. By a judgment entry on August 13, 1973, and with the consent of the appellant, William Dwight Leininger, the Juvenile Court granted *temporary care, custody and control* of the minor child to appellee Beck.

Sometime during the year 1970, the appellant remarried and, after a few months, again was divorced. On March 16, 1974, the appellant again married. He and his wife purchased a suitable home in a new development in the city of Wauseon, Ohio. Soon thereafter, he requested the return of his son from the custody of Harvey W. Beck and was refused. Following this refusal, on September 4, 1974, the appellant filed a motion in the Juvenile Court for an order modifying the temporary custody order of August 13, 1973, to reinstate the original order issued by the Court of Common Pleas, whereby custody had been granted to the appellant.

A hearing on appellant's motion, filed September 4, 1974, was conducted on September 25, 1974, and the testimony of several witnesses was taken. There was no stenographic record of this hearing and the trial court

made no specific findings of fact and conclusions of law; however, the counsel for each party, together with the court, did prepare a stipulation as to the testimony of the various witnesses. From this record of testimony, it appears that the minor child was in the Beck home continuously from December 1970, until the present time. During the period from December 1970, until on or about August 13, 1973, the appellant contributed nothing to the support of the minor child, and thereafter contributed only lunch money and some clothing. The appellant's visits to his minor child were sporadic. The appellant does hold a steady job with a salary of $1,000 per month, and his wife, Susan Leininger, is employed, earning $125 per week. The record further indicates that the appellant is a suitable person and that both he and his wife want the minor child returned to the appellant who is fully capable of providing a good home for his son. However, the minor child has been integrated into the family of the appellee, and into the appellee's community, the city of Titusville, a community near Wauseon, Ohio. Moreover, the minor child is a happy, well adjusted, normal child and the care being given to him by Mr. Beck and his family is adequate.

The trial court's judgment entry of October 11, 1974, is set forth verbatim, in part, as follows:

"* * * Upon the proofs and evidence presented in open Court, the Court finds that Harvey W. Beck was granted care, custody and control of Keith Leininger by this Court on August 13, 1973. Further, that Harvey W. Beck, custodian, does not agree to the change and custody as requested by the plaintiff. Further, that the child's present environment in the home of his custodian does not endanger his physical health or significantly impair his emotional development and that the harm likely to be caused by a change in his present environment is not outweighed by the advantages of such change to the child. Further, that the child has not been integrated into the family of the plaintiff, William Dwight Leininger, the person seeking custody.

"The court further finds after due consideration of the wishes of the plaintiff regarding his son's custody; the child's interaction and interrelation with his custodian and the custodian's family; the child's adjustment to his home, school and community; and the mental and physical health of all parties involved in the situation, that it is in the best interests of the child that he remain in the temporary care, custody and control of his custodian, Harvey W. Beck, therefore;

"It is ordered, adjudged and decreed that the motion of the plaintiff, William Dwight Leininger, is overruled and that the temporary care, custody and control of Keith Leininger shall remain in his custodian, Harvey W. Beck."

The court in its judgment entry also granted the appellant certain visitation and companionship rights. A comparison of this judgment entry with R. C. 3109.04(B) and (C), *amended to include such paragraphs, effective September 23, 1974,* indicate a great similarity. These added paragraphs read:

"(B) The court shall not modify a prior custody decree unless it finds, based on facts which have arisen since the prior decree or which were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the custodian designated by the prior decree, unless one of the following applies:

"(1) The custodian agrees to a change in custody.

"(2) The child, with the consent of the custodian, has been integrated into the family of the person seeking custody.

"(3) The child's present environment endangers his physical health or significantly impairs his emotional development, and the harm likely to be caused by a change of environment is outweighed by the advantages of such change to the child.

"(C) In determining the best interests of a child,

pursuant to this section, whether on an original award of custody or modification of custody, the court shall consider all relevant factors, including:

"(1) The wishes of the child's parents regarding his custody;

"(2) The wishes of the child regarding his custody if he is eleven years of age or older;

"(3) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interests;

"(4) The child's adjustment to his home, school, and community;

"(5) The mental and physical health of all persons involved in the situation."

The first paragraph of R. C. 3109.04 also was amended on September 23, 1974. Formerly this section read, in part, as follows:

"* * * If the court finds, with respect to any child under eighteen years of age, that *neither parent is a suitable* person to have custody it may commit the child to a relative of the child or certify a copy of its findings, together with so much of the record * * * to the juvenile court for further proceedings * * *." (Emphasis ours.)

After the amendment, the words "that *neither parent is a suitable person* to have custody" were changed to read "that custody to neither parent is *in the best interest of the child.*" (Emphasis ours.)

This change indicates that a greater emphasis is now placed upon the best interest of the child rather than whether the parent is a suitable person to have custody.

Prior to the amendment of R. C. 3109.04, on September 23, 1974, Civ. R. 75(P) was practically a verbatim statement thereof; however, it is no longer applicable as a rule in a proceeding in the juvenile court.[1]

---

[1] The effective date of Civ. R. 75(P) was July 1, 1970, and even though the civil rules have been amended since this date, Civ. R. 75(P) has remained the same. Civ. R. 74, entitled Juvenile proceedings, reads as follows:

"These Rules of Civil Procedure shall apply in civil juvenile pro-

Even though Civ. R. 75(P) is no longer applicable to the Juvenile Court, no material change is effected in that the Juvenile Court of Fulton County, as a division of the Domestic Relations or Probate sections of the Court of Common Pleas (see R. C. 2151.07), is controlled by the applicable sections of R. C. Chapter 3109, unless in conflict with specific provisions of R. C. Chapter 2151, or the Ohio Rules of Juvenile Procedure, effective July 1, 1972. We find no such conflict. The definitions stated in R. C. 2151.011 create no conflict. Paragraph (B) (10), (12) and (13), define "legal custody," "permanent custody," and "temporary custody." However, these terms have their defined meaning limited to R. C. 2151.01 to 2151.99, inclusive.[2] These terms, as used in these sections,

ceedings except to the extent that * * * by their nature these rules would be clearly inapplicable."

The staff note to the original Civ. R. 74 stated:

· "The Civil Rules apply in appropriate circumstances only to civil proceedings in the juvenile division. * * *"

Civ. Rule 74 was later amended, effective July 1, 1972, by this addition:

"Rule 74 shall be abrogated upon the effective date of the Ohio Rules of Juvenile Procedure."

The Ohio Rules of Juvenile Procedure became effective July 1, 1972. By the precise terms of Civ. R. 74, as amended, Rule 74 was abrogated as of July 1, 1972. We further note that the Ohio Rules of Juvenile Procedure do not incorporate the guidelines set forth in R. C. 3109.04.

[2]R. C. 2151.011(B) reads in part:

"As used in sections 2151.01 to 2151.99, inclusive of the Revised Code: * * *

"(10) 'Legal custody' means a legal status created by court order which vests in the custodian the rights to have physical care and control of the child and to determine where and with whom he shall live, and the right and duty to protect, train, and discipline him and to provide him with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the Revised Code or by the court. * * *

"(12) 'Permanent custody' means a legal status created by the court which vests in the county department of welfare which has assumed the administration of child welfare, county welfare board,

are limited to proceedings involving delinquent, juvenile traffic offenders, unruly children, neglected children, dependent children, and certain criminal proceedings. They are not applicable to proceedings in Juvenile Court involving custody of minor children arising solely out of divorce proceedings, certified by the Court of Common Pleas or a division thereof.

In determining the custody of minor children, the Juvenile Court must be guided by the statutory provisions set forth in R. C. Chapter 3109, and by the applicable case law. In the December term of 1877, the Supreme Court of Ohio, in *Clark* v. *Bayer*, 32 Ohio St. 299, at page 310, set forth basic propositions as to the custody of minor children, to wit:

"1. As a general rule the parents are entitled to the custody of their minor children. When the parents are living apart, the father is, prima facie, entitled to that custody, and where he is a suitable person, able and willing to support and care for them, his right is paramount to that of all other persons, except that of the mother in cases where the infant child is of such tender years as to require her present care; but in all cases of controverted right to custody, the welfare of the minor is first to be considered.

"2. The father's right is not, however, absolute under all circumstances. He may relinquish it by contract; forfeit it by abandonment; lose it by being in a condition of total inability to afford his minor children necessary care and support."

As indicated in the case of *Baker* v. *Baker*, 85 Ohio App. 470, statutory enactments concerning custody of children in the case of divorce have existed in the state of

---

or certified organization, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of any and all parental rights, privileges, and obligations, including all residual rights and obligations.

"(13) 'Temporary custody' means legal custody as defined in division (B) (10) of this section which may be terminated at any time at the discretion of the court. * * *"

Ohio since the Territorial Act of 1795. At page 474, Judge Fess, speaking for the court, stated:

"Prior to and since 1893 it has been held that in determining the custody of children, the paramount consideration is what is for the best interest of the child. * * *"

He cited former decisions of the Ohio Supreme Court, the Ohio appellate courts and others.

In the recent case of *Gordon* v. *Gordon*, 33 Ohio App. 2d 257, Judge. Guernsey, of the Third Appellate District, in a unanimous decision, likewise commented upon the statutes enacted by the General Assembly, with reference to the rights of third parties to the custody of children, specifically referring to R. C. 3109.04 and 3109.06, and Civ. R. 75(P). In both *Baker* and *Gordon*, emphasis is made that the paramount consideration is what is for the best interest of the child in determining custody. The court, in *Gordon*, does point out that the Supreme Court of Ohio indicated in *Grandon* v. *Grandon*, 164 Ohio St. 234, and also in *Baxter* v. *Baxter*, 27 Ohio St. 2d 168, that the trial court had no authority to award custody of the child to its grandmother unless the court found that neither parent was a suitable person to have custody.

Compare, also, *Sonnenberg* v. *Ohio*, 40 Ohio App. 475. The Juvenile Court was held to have jurisdiction to proceed in a manner respecting the custody of a minor child the same as a Court of Common Pleas would have been authorized originally to do, and the Juvenile Court, it was said, is not restricted to a dependency action. The custody of the minor child involved had been given to the maternal grandmother upon the divorce of the parents by the Court of Common Pleas and the cause was then certified to the Juvenile Court. Thereafter, the father filed a dependency affidavit in the Juvenile Court and was granted custody of the minor child. This judgment was reversed and the court stated, at page 485: "[M]odification of custody cannot be accomplished by dependency proceedings * * *." The maternal grandmother was not a party to the dependency proceedings and the court, at page

485, made this statement: "In order to give sanctity to court orders which substantially affect the rights of parties, such parties, before they can be divested of the rights so conferred upon them, should be afforded an opportunity to defend against any change or modification."

In the case of *Selby* v. *Selby*, 69 Ohio Law Abs. 257, the court held that where custody is given to the mother, it is improper for the trial court to place restrictions upon such custody with reference to remarriage, the necessity of having a relative residing in the home, and the choice of schools to which the children should be sent. The court, at page 260, defined "custody" as follows:

"Custody includes within its meaning every element of provision for the physical, moral and mental well being of the children. It implies that the person having custody has the immediate personal care and control of the children.

"An award of custody of minor children determines the rights of the parties with respect to the care and control of their children, subject to the continuing jurisdiction of the court to modify the award upon a former application.

"The jurisdiction to modify a former award of custody continues in the court which enters such order."

In *Kolody* v. *Kolody*, 110 Ohio App. 260, the court further defined custody, at page 262, as follows: "We believe that the word 'custody,' as used in Section 2153.23(A)(2), Revised Code, connotes the sum total of all parental rights, among which is the right to support for such child." (The court further held that an award of custody could include an order for the support of the child.)

Compare, also, *Rowe* v. *Rowe*, 58 Ohio Law Abs. 497, wherein *the decree for divorce incorporated an agreement of the parties* that the custody of the minor children be placed with the maternal grandmother, with reasonable rights of visitation in both parties. The court stated that when it is found that the parent is a suitable person, that the fitness of the home is not in dispute, and that such parent is able and willing to support and care for his child, the parent's right is paramount to that of all other per-

sons. However, the court further stated that an agreement between the husband and wife that the custody of the child should be given to a third person is enforceable, being subject only to a judicial determination that such third person is a proper person to have the custody and care of the child. The court refused to grant the motion of the husband to modify the previous award of custody and permitted the custody to remain with the maternal grandmother. At page 499 of *Rowe,* the court states:

"We know of no case and none is cited which holds that parents may not agree to waive their right to the custody of their children. This, of course, would not be controlling upon a court which would have the authority to determine custody, but it would be binding upon a parent who so agrees.

"* * * That one during trial may waive a known right is a principle well recognized in the law, even in a criminal case where a constitutional right is involved. *State, ex rel. Warner,* v. *Baer, et al.,* 103 Ohio St. 585."

See also *Jackson* v. *Fitzgerald,* 185 A. 2d 724, relating to visitation rights of persons other than natural or adopted parents. The case held that the grandmother with whom the child and the mother had lived for approximately a year and seven months did not entitle the grandmother to any visitation rights wherein the father was the natural custodian and had not been declared an unsuitable person. The court stated that they were not insensitive to the yearnings of grandparents and other relatives, but did not think there was any legal right thereby created without showing that the needs and welfare of the child so dictated. An annotation in 98 A. L. R. 2d 325 gives an illustration where visitation rights were upheld for persons other than the parents.

*In re Custody of Smelser,* 22 Ohio Misc. 41, states that R. C. 3109.04 is applicable to a proceeding pursuant to R. C. 2151.23(A)(2), for a change of custody previously granted. (The court determined that the best interest of the 15 year old child involved was that his preference to live with the mother be honored and the motion to change

custody was sustained.) 18 Ohio Jurisprudence 2d 418, Divorce & Separation, Section 136 et seq. See also 18 Ohio Jurisprudence 2d 602. Divorce & Separation, Section 278.

R. C. 3109.03 to 3109.06, inclusive, are applicable to custody of minor children in proceedings in the Juvenile Court; likewise applicable is the case law of Ohio.

In the case *sub judice,* at the time of the original divorce decree, July 13, 1968, the appellant was granted custody of his minor son, Keith Leininger. The custody granted was unrestricted in any way and continued in the father until August 13, 1973, even though the child was placed by the father in the home of his friend, Harvey W. Beck, sometime in the year 1968 and remained therein, on and off, until December 1970, at which time the child remained continuously in the home of Harvey W. Beck. Until the court order of August 13, 1973, the provisions of R. C. 5103.16 prevented the placement or the acceptance for placement of the child under any oral agreement or understanding transferring or surrendering any of the legal rights, powers or duties of the legal parent into the temporary custody of any person, without the written consent of the department of public welfare or by a commitment of a Juvenile Court, or by the Probate Court as provided in such section. The record herein is not too specific as to the arrangement by which the minor originally was permitted to remain in the home of the appellee, Harvey W. Beck. On August 13, 1973, as previously noted, the Juvenile Court granted the *temporary care,* custody and control of the minor child to the appellee, Harvey W. Beck, with the consent of the father, the appellant herein. This judgment was not contrary to law and well within the discretion of the court; R. C. 3109.04(B) and (C) were not effective until September 23, 1974.

Webster's Third International New Dictionary (1961), defines the word "temporary" as: "lasting for a time only: existing or continuing for a limited time." In 41 Words and Phrases 399, et seq., we find such statements as: "'Temporary' is the opposite of permanent. *State* v. *Curtiss,* 173 N. E. 2d 652, 653, 241 Ind. 507." "'Tempo-

rary' implies no definite term of duration, *Weitzner* v. *Stichman*, 64 N. Y. S. 2d 40, 49." " 'Temporary' means lasting for time only, existing or continuing for limited time, not permanent, ephemeral, transitory. *Slater* v. *Woods*, 224 N. Y. S. 2d 237, 243, 32 Misc. 2d 732." "Characterizing that which is to last for a limited time. *State, ex rel. Crown Coach Co.,* v. *Public Service Commission,* 179 S. W. 2d 123, 125, 238 Mo. App. 287." " 'Temporary' means transient or passing—not permanent, existing or continuing for a limited time only. *Lord Mfg. Co.* v. *Nemenz*, D. C. Pa., 65 F. Supp. 711, 722." " 'Temporary' ordinarily means for a limited as contrasted with unlimited or indefinite period, *McClayton* v. *W. B. Cassell Co.*, D. C. Md., 66 F. Supp. 165, 172."

Keeping in mind the definitions of "temporary custody" and "permanent custody" as stated in R. C. 2151.011, we now have the anomalous situation of having special meanings for these terms limited to this chapter of the revised code; whereas, these terms generally may have a different meaning. The special meaning given to these terms by R. C. 2151.011 is not applicable to the "temporary custody" order involved herein. 33 Ohio Jurisprudence 2d (Cum. Supp.) 58, Juvenile Court, Section 49, Note 9-11.

The Juvenile Court in its judgment entry of October 11, 1974, apparently considered itself controlled by paragraph (B) of R. C. 3109.04. Since the *temporary* custody order of August 13, 1973, was made with the consent of the father who had previously been granted full custody, and since he had filed his motion to have custody restored to him by motion filed September 4, 1974, the newly enacted paragraph (B) (effective September 23, 1974) is inapplicable to these proceedings, and the Juvenile Court was not bound thereby.

The entry of August 13, 1973, was with the consent of the father on a temporary basis only. It is apparent that the court likewise had in mind custody on a temporary basis only. It would be unfair and unconscionable with reference to the father to restrict the court by applying paragraph (B) in modifying such a temporary

custody order. If the terms of this paragraph were applied to the facts in this case, and to the temporary custody order in the sense that it would be considered a "prior custody decree," the present custodian could forever prevent the father from ever regaining custody. This result could be most inequitable. We, therefore, find that paragraph (B) of R. C. 3109.04, effective September 23, 1974, is not applicable. Even if it were applicable to such a factual situation, it affects substantial vested rights of both the parent and the child and, therefore, cannot be retroactive in its application. 10 Ohio Jurisprudence 2d 618, Constitutional Law, Section 568. Had the Juvenile Court judge considered that he was not controlled by paragraph (B) and had he acted solely within his discretion, with full recognition of established law in the determination of the best interests of the child, he might well have come to a different conclusion.

The first assignment of error is found well taken in that the Juvenile Court erroneously applied the newly enacted paragraph (B) of R. C. 3109.04, in overruling appellant's motion for change of custody, without finding that the appellant was not a suitable parent. The second assignment of error is not relevant to the facts herein and is found not well taken.

If the Juvenile Court determines that custody should be restored to the father, visitation rights to the present custodian need not be precluded. See *Baker* v. *Baker, supra*. The General Assembly has made the same determination. See R. C. 3109.05(F), the last two sentences of which provide as follows:

"In the discretion of the court, reasonable companionship or visitation rights may be granted to any other person having an interest in the welfare of the child. The juvenile court shall have exclusive jurisdiction to enter the order in any case certified to it from another court."

The judgment of the Juvenile Court is reversed, and since this case is one involving the custody of a minor and the Juvenile Court has continuing jurisdiction, this cause is remanded to that court for a further hearing to

determine whether or not temporary custody should remain with the present custodian, or whether the custody originally given to the father by the Court of Common Pleas should be restored. (See *State* v. *Staten*, 18 Ohio St. 2d 13, at 22, final paragraph.)

*Judgment reversed.*

BROWN, P. J., and KIROFF, J., concur.

KIROFF, J., of the Court of Common Pleas of Lucas County, sitting by designation in the Sixth Appellate District.

BROWN, P. J., concurring. In reversing the judgment of the Juvenile Court which resulted in a denial of custody to the father, William Leininger, of his minor child, Keith Leininger, I would stress the following facts in the record and fashion the following legal principles as applicable thereto.

In 1968, the appellant in the divorce decree was granted custody of the minor child of the parties. By consent of the appellant, the minor child from time to time lived in the home of appellee Harvey W. Beck and his wife, from July 1968 to December 1970, and thereafter continually until August 13, 1973, at the request and with the consent of the appellant.

The Juvenile Court, by a judgment entry dated August 13, 1973, granted the temporary care, custody and control of Keith Leininger to Mr. Beck. The judgment entry recites that it was based on an affidavit. The only affidavit on record is that of Harvey Beck and recites that by agreement of both parents their son, Keith Leininger, a minor, was placed in the Beck home at the request of the Leininger parents and with the consent and approval of the Juvenile Court. No other factual basis, nor opposition by appellant to such judicial proceedings, appears in the record as a foundation for the August 13, 1973, temporary custody order. The temporary custody order was triggered by a motion for temporary custody filed by Mr. Beck.

Therefore, the Juvenile Court's judgment of Octo-

ber 11, 1974, denying appellant's motion, as the father, to change the temporary custody order and grant him custody of his son rests primarily upon an agreement of the parents, and their actions pursuant thereto, placing their child in the Beck home, and the ratification of this placement by the Juvenile Court through a temporary custody order.

I would fashion the following legal principle as applicable to these facts. Where a father is granted legal custody of his minor child by a divorce decree, and thereafter the Juvenile Court grants temporary custody to a third person, unrelated by blood or marriage to the minor child, based only on the fact that such third person has had physical custody of such child, with the consent and approval of his father, for approximately three to five years, such temporary custody order is not within the meaning of R. C. 3109.04, and was not intended to be controlled by the factors and standards of paragraphs (B) and (C), when the father seeks a modification of such temporary custody order and a return of legal custody of such child to himself.

A temporary custody order, based on the consent and approval of the parent having permanent legal custody by an order entered in a divorce decree, granting custody of a minor child to a third person unrelated by blood to such child, is one which may be terminated at any time at the discretion of the court having jurisdiction, consistent with common law principles. This is geared to the lodestar legal proposition that a parent has a right to custody of his child paramount to the claim of all other persons to such custody, unless the court judicially determines that the parent is an unfit and unsuitable person for such custody, or the parent loses such right on the basis of a common law legal principle properly applicable, such as his or her abandonment or refusal to support the child. Cf. R. C. 2151.011(B)(13); *Baxter* v. *Baxter*, 27 Ohio St. 2d 168; *Grandon* v. *Grandon*, 164 Ohio St. 234; *Clark* v. *Bayer*, 32 Ohio St. 299; *Rowe* v. *Rowe*, 58 Ohio Law Abs. 497; *Jackson* v. *Fitzgerald*, 185 A. 2d 724.